IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

Cherrie Haywood, et al.,        )
                                )
        Plaintiffs,             )
                                )
        v.                      )      Case No. 1:08cv981(GBL)
                                )
Carlos M. Gutierrez,            )
Secretary, United States        )
Department of Commerce,         )
                                )
        Defendant.              )

**MEMORANDUM ORDER**

THIS MATTER is before the Court on Defendant Carlos M.
Gutierrez's Motion for Summary Judgment and Partial Motion for
Dismissal.  This case concerns the discrimination claims of ten
Plaintiffs who allege that they were discriminated against when
denied accretion-of-duties promotions within the United States
Patent and Trademark Office ("USPTO").  There are three issues
before the Court.  The first issue is whether a comparator is
similarly situated where the comparator receives a promotion
through the same process under which Plaintiffs were denied
promotions, but the comparator performs different job duties and
his pay grade is six steps above that of Plaintiffs.  The second
issue is whether Plaintiffs show pretext where Defendant's
proffered reason for denying them promotions is that a desk audit

1

revealed that Plaintiffs' job duties did not warrant promotion to a higher grade, but Plaintiffs present facts showing a history of inefficiencies in the USPTO's promotion process.  The third issue is whether Plaintiffs' constitutional claims survive where Plaintiffs allege due process and equal protection violations against an agent of the United States government in his official capacity but the United States has not waived its sovereign immunity in the case.

The Court grants Defendant's Motion for Summary Judgment and Partial Motion for Dismissal.  First, the Court holds that Plaintiffs fail to establish a prima facie case of discrimination because being subject to the same promotion process does not make a comparator similarly situated where his position and job duties are substantially different.  Second, assuming, *arguendo*, that Plaintiffs were able to establish a prima facie case of discrimination, the Court holds that Plaintiffs fail to show pretext because proof of general inefficiencies in an employer's promotion process, without additional evidence of discrimination directed at individual Plaintiffs, is insufficient to create a genuine issue of fact regarding discriminatory motive.  Third, the Court holds that Plaintiffs' constitutional claims fail under Rule 12(b)(1) because the United States has not waived its sovereign immunity and, alternatively, under Rule 12(b)(6)

2

because Plaintiffs cannot bring *Bivens* claims against an agent of the federal government in his official capacity.  The Court's holdings are addressed fully in order below.

## I. BACKGROUND

This case concerns the employment discrimination claims of ten similarly-situated current and former employees of the USPTO.[1]  Plaintiffs allege that the USPTO unlawfully discriminated against them when it denied Plaintiffs accretion-of-duties promotions from GS-7 to GS-8 positions, yet granted an accretion-of-duties promotion to Mr. Kevin Little, a white male. Defendant Carlos Gutierrez, standing in as Defendant in his official capacity, now moves for summary judgment and partial dismissal of Plaintiffs' claims.

Plaintiffs are ten current and former employees of the USPTO's Office of Initial Patent Examination ("OIPE").  OIPE is a branch within the USPTO that receives incoming patent applications and screens them for completeness before forwarding them to the appropriate Patent Technology Center for examination.

In or around 2000, the OIPE was undergoing a major reorganization that implemented a new automated patent

---

[1]Eight of the ten Plaintiffs are African American females:  Ms. Cherrie Haywood, Ms. Theresa Williams, Ms. Kathy Nelson, Ms. Karen Smith, Ms. Marian Day, Ms. Tushombe Stokes, Ms. Deshawn Durham, and Ms. Roxanne Rawls. Plaintiff Ms. Eleanor Kurtz is a European American female. Plaintiff Mr. John Dill is an African American male.

3

application processing system.  As a result, many functions
previously performed by federal employees were transferred to
contract personnel and the automated system.

Among the employees most affected by OIPE's reorganization
were the GS-7 Legal Instrument Examiners ("LIEs").  Prior to the
reorganization, the OIPE employed approximately one hundred LIEs.
By August 2002, it employed only fifty-one total federal
employees.  Most of the OIPE's LIEs were reassigned to various
Patent Technology Centers.  One exception to this reassignment
was a group of LIEs who stayed within OIPE and received temporary
promotions to GS-8 Lead LIEs.  These LIEs were promoted to help
contract personnel transition and assume the duties originally
performed by LIEs prior to the reorganization.  Plaintiffs were
all part of the excepted group of LIES that received temporary
promotions to GS-8.

The primary difference between the GS-7 LIE position and the
GS-8 Lead LIE position is that the Lead LIE performs supervisory
functions.  LIEs "examine an assigned docket of legal documents
such as applications, petitions, notices, and other similar
materials for compliance [with USPTO legal requirements]."  (LIE
Position Description, Gov't Ex. 2.)  An LIE's major
responsibilities include: checking applications for completeness
and compliance with USPTO regulations; identifying errors or

4

deficiencies in an application; preparing notices to customers detailing missing information and/or fees; maintaining the application's docket and correspondence record; performing quality reviews of transactions processed by lower grade employees; and providing customer service regarding the application process and the status of pending applications. (*Id.*)   In contrast, Lead LIEs "lead a team of [LIEs]"; each Lead LIE must lead a group "composed of at least three [LIEs]."   (Lead LIE Position Description, Gov't Ex. 3.)  A Lead LIE's major responsibilities include: directing daily duties of LIEs; making or providing input on selection and termination decisions; serving as acting supervisor in the supervisor's absence; providing input to the supervisor on the work-schedule priorities of the LIEs; managing the work flow of LIEs and coordinating with other Lead LIEs to facilitate the meeting of production quotas; training LIEs on all aspects of initial patent examination, including identifying problems and areas requiring additional training; and collaborating with other Lead LIEs and supervisors regarding the development of policies and procedures.  (*Id.*)

Plaintiffs were aware that their promotions to GS-8 Lead LIEs were temporary and that they were not to exceed one year. Although the promotions were not to exceed one year, Plaintiffs' third-line supervisor and the director of OIPE, Mr. Thomas

Koontz, persuaded the USPTO to extend and renew Plaintiffs'
temporary promotions until 2002.  In or around July 2002, all of
the temporary GS-8 Lead LIEs, including Plaintiffs, were informed
that their temporary positions would soon expire and that,
beginning in August 2002, they would return to their original GS-
7 levels.

Upon notification that their GS-8 promotions would soon
expire, Plaintiffs sought accretion-of-duties promotions to
maintain their GS-8 positions.  An accretion-of-duties promotion
is "[a] promotion resulting from an employee's position being
classified at a higher grade because of additional duties and
responsibilities."  5 C.F.R. § 335.103(c)(3)(ii).  It is a
noncompetitive promotion that allows an employee to obtain a
higher GS level without going through the competitive process.

In the fall of 2002, the USPTO'S Office of Human Resources
("OHR") conducted a desk audit of Plaintiffs' work tasks to
determine whether accretion-of-duties promotions were warranted.
A desk audit is a nonpersonal evaluation used to make sure that
employees are being paid fairly for the duties that they actually
perform.  In a desk audit, the supervisor retains the
responsibility of determining which position performs which
specific duties, while the classifier who performs the desk audit
compares the duties as determined by the supervisor against

6

published Classification Standards.  The classifier uses this comparison to determine the title, series, and grade of the position.  The Classification Standards for a particular grade are established by the United States Office of Personnel Management ("OPM"), not the USPTO.

OHR Human Resources Specialists Ms. Gail Zamperini and Ms. Karen Long conducted the desk audit of Plaintiffs' work tasks. Both visited Plaintiffs' offices to conduct in-person interviews and to observe the daily tasks Plaintiffs performed.  During the desk audit, Plaintiffs had several opportunities to present information showing that a reclassification of their LIE positions was warranted.  Plaintiffs received a ten-page questionnaire concerning their job tasks, were allowed to provide samples of their work product, and were informed to call or email OHR anytime to provide additional information.

Following the desk audit, OHR determined that Plaintiffs' position was properly classified at the GS-7 level.  OHR issued a Position Evaluation Report, which detailed how OHR determined the classification.  The Report first classified the LIE position within the job family "Legal and Kindred Group" and the series "Legal Instruments Examining Series."  OHR also considered an alternate series, "Paralegal Specialist Series," before determining that the Legal Instruments Examining Series was a

7

better fit.  Within this series and title, Plaintiffs received the maximum factor-level assignments possible, with the exception of one factor, "Knowledge Required by the Position," to which OHR assigned the second-highest factor level.

According to Plaintiffs, several facts surrounding the desk audit indicate that the desk audit was a "sham".  First, Ms. Long had never performed a desk audit prior to conducting Plaintiffs'. As a result, Plaintiffs' desk audit was instead a training exercise.  Second, Ms. Zamperini provided Ms. Long little guidance during the desk audit and fell asleep during the desk audit interviews.

Plaintiffs filed a discrimination complaint after being denied accretion-of-duties promotions.  Both the USPTO's Office of Civil Rights and the Equal Employment Opportunity Commission found no discrimination and issued a right to sue letter. Plaintiffs brought this suit alleging race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.*, age discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, and constitutional violations. Defendant now moves for summary judgment on Plaintiffs' discrimination claims and dismissal of Plaintiffs' constitutional claims.

8

## II. DISCUSSION

### A. Standard of Review

#### 1.  Rule 56 Summary Judgment

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson*, 477 U.S. at 247-48.  A "material fact" is a fact that might affect the outcome of a party's case.  *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir.

9

2001).  Whether a fact is considered to be "material" is
determined by the substantive law, and "[o]nly disputes over
facts that might affect the outcome of the suit under the
governing law will properly preclude the entry of summary
judgment."  *Anderson*, 477 U.S. at 248.  Rule 56(e) requires the
nonmoving party to go beyond the pleadings and by its own
affidavits, or by the depositions, answers to interrogatories,
and admissions on file, designate specific facts showing that
there is a genuine issue for trial.  *Celotex Corp. v. Catrett*,
477 U.S. 317, 324 (1986).

### 2. Rule 12(b)(6) Dismissal

A Federal Rule of Civil Procedure 12(b)(6) motion should be
granted unless an adequately stated claim is "supported by
showing any set of facts consistent with the allegations in the
complaint."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955,
1969 (2007); *see* FED. R. CIV. P. 12(b)(6).  In considering a Rule
12(b)(6) motion, the Court must construe the complaint in the
light most favorable to the plaintiff, read the complaint as a
whole, and take the facts asserted therein as true.  *Mylan Lab.,
Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  In addition
to the complaint, the Court may also examine "documents
incorporated into the complaint by reference, and matters of
which a court may take judicial notice."  *Tellabs, Inc. v. Makor*

10

*Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007). "Conclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). Because the central purpose of the complaint is to provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

## B. Analysis

### 1. Title VII/ADEA Discrimination

The Court grants summary judgment for Defendant because Plaintiffs have not established a prima facie case of discrimination since their proffered comparator, Mr. Little, is not similarly situated. Assuming, *arguendo*, that Plaintiffs properly established a prima facie case of discrimination, their claims still fail because they fail to rebut Defendant's legitimate, nondiscriminatory reason for denying them promotions. Title VII and ADEA discrimnation claims are evaluated under the burden shifting rules established by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).

First, in order to establish a prima facie case of discrimination in the failure-to-promote context, the plaintiffs

11

must show that 1) they were members of a protected class; 2) they applied for the position in question; 3) they were qualified for the position; and 4) the defendant rejected their application under circumstances that give rise to an inference of discrimination. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005).[2]

Next, if the plaintiffs establish a prima facie case of discrimination, the burden shifts to the defendant "to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007). This is a burden of production, not one of proof or persuasion, so the reasons proffered need not persuade the Court, be deemed credible, or even have been relied upon in making the employment decision. *See id.; St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). This is so because the burden of proof and persuasion remains with the plaintiffs at all times. *Id.* at 511 (noting that the defendant's burden to offer a nondiscriminatory rationale "does not shift the burden of proof, [and that] . . . the Title VII plaintiff at all times bears the ultimate burden of persuasion." (internal citations omitted)); *Mereish v. Walker*, 359 F.3d 330, 335 (4th Cir. 2004).

---

[2]This framework applies, with little variation, to failure-to-promote claims whether based upon race, gender, or age. *See Westinghouse*, 406 F.3d at 268; *Hux v. City of Newport News, Va.*, 451 F.3d 311, 314 (4th Cir. 2006); *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (en banc).

Finally, once the defendant states a nondiscriminatory reason for denying the promotions, the burden shifts back to the plaintiffs to prove by a preponderance of the evidence that the reasons offered were not the actual reasons, but were a pretext for discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *Lettieri v. Equant, Inc.*, 478 F.3d 640, 646-47 (4th Cir. 2007). At this last step "the burden to demonstrate pretext merges with the ultimate burden of persuading the court that [the plaintiffs have] been the victim[s] of intentional discrimination." *See id.* (quoting *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). The plaintiffs' "own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons," *Dockins v. Benchmark Comms.*, 176 F.3d 745, 749 (4th Cir. 1999), and their burden cannot be satisfied "by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it. . ." *Hux*, 451 F.3d at 315.

Here, the Court finds that Plaintiffs fail to establish a prima facie case of discrimination. Assuming, *arguendo*, that Plaintiffs established a prima facie case of discrimination, the Court finds that they fail to rebut Defendant's nondiscriminatory

13

reasons for denying them promotions.  The Court addresses each holding in turn below.

a. *Prima facie discrimination*

The Court grants summary judgment for Defendant because Plaintiffs have not established a prima facie case of discrimination since the comparator they rely upon is not similarly situated.[3]  In order for a comparator to be similarly situated, he must be "similar in all relevant respects."  *See Heyward v. Monroe*, 166 F.3d 332 (4th Cir. 1998) (table); *Telep v. Potter*, No. 2:04-cv-006, 2005 WL 2454103, at *7 (E.D. Va. 2005); *Reese v. C. Richard Dobson, Inc.*, No. 3:01-cv-181, 2001 U.S. Dist. LEXIS 12853, at *9-10 (E.D. Va. Aug. 23, 2001); *see also Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997); *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *Smith v. Monsanto Chem. Co.*, 770 F.2d 719, 723 (8th Cir. 1985).

---

[3]As a matter of law, Plaintiffs need not identify a similarly-situated comparator in order to state a prima facie case of Title VII/ADEA discrimination.  *See Bryant v. Aiken Reg'l Med. Ctrs, Inc.*, 333 F.3d 536, 545-46 (4th Cir. 2003).  However, where the plaintiffs' discrimination allegations rely upon comparisons to a similarly-situated employee from a non-protected class, the plaintiffs' ability to state a prima facie case of discrimination depends upon the validity of their comparator.  *Cf. Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 648 (4th Cir. 2002) (noting that where a "jury's finding of pretext does not stand or fall on [a comparison of the plaintiffs' qualifications with those of the successful candidate]," the jury's finding could be upheld).  Here, the crux of Plaintiffs' argument is that they were denied accretion-of-duties promotions yet a similarily-situated white male, Mr. Kevin Little, was not.  As such, the Court evaluates Plaintiffs' ability to state a prima facie case by considering the validity of Mr. Little as a similarly-situated comparator.

"[M]erely showing that an individual [is] involved in an analogous situation is insufficient." *Powell v. city of Norfolk*, No. 2:97-cv-73, 1998 U.S. Dist. LEXIS 15915, at *10 (E.D. Va. Aug. 17, 1998), aff'd by unpublished opinion, 181 F.3d 90 (4th Cir. 1999) (table).

Here, Plaintiffs argue that Mr. Little is similarly situated because both he and Plaintiffs performed increased job duties at a higher grade level over a substantial period of time, but that a disparate application of the accretion-of-duties criterion resulted in Mr. Little receiving the same type of promotion denied Plaintiffs. Hence, Plaintiffs argue that they have shown disparate treatment among similarly-situated employees by showing the disparate application of this promotion criterion.

Plaintiffs' argument fails because Mr. Little is not similarly situated. Viewing the record in the light most favorable to Plaintiffs, even if both they and Mr. Little performed increased job duties for an extended period of time, the Court must go beyond this similarity to determine whether Mr. Little is a similarly-situated comparator. As the weight of authority suggests, the Court must look for similarities as to *all* relevant factors, not just one. Plaintiffs contend that the performance of additional duties is the only relevant factor in deciding their discrimination claims, but this position does not

weigh several basic factors necessarily relevant to any failure-to-promote inquiry.

In addition to the performance of increased job duties, the Court must also consider the exact nature of the job duties and the employees' positions within the organization. In analyzing these additional factors, it is clear to the Court that Mr. Little is not a valid similarly-situated comparator for two reasons. First, Mr. Little's duties were far more complex than Plaintiffs'. Mr. Little coordinated with government contractors and various departments within the USPTO for automation system planning and led development teams that defined the requirements for the system, (See Little Position Evaluation Statement, Gov't Ex. 14; Accretion of Duties Promotion Justification, Gov't Ex. 13), but Plaintiffs' work was primarily within OIPE and involved no strategic planning (See LIE Position Evaluation Report, Gov't Ex. 10 at 6). These differences are important because Mr. Little cannot be similarly situated if his position consists of vastly different duties, as Defendant's reasons for promoting him are likely to be vastly different as well.

Second, Mr. Little's position is completely different from Plaintiffs'. Mr. Little was a GS-13 prior to his accretion-of-duties promotion, a full six grades above Plaintiffs. (See Gov't Ex. 11.) Further, Mr. Little's position falls within the Program

16

Analyst series, which is completely different than the Legal
Instruments Examiner series.   (See Gov't Exs. 10 and 14.)   While
Mr. Little was a program analyst responsible for program
management, development, and execution of automated systems
within OIPE (Gov't Ex. 14), Plaintiffs as LIEs primarily
processed patent applications and reviewed the work of
contractors involved in pre-examination processing (Gov't Ex.
10).   Although the Court acknowledges that a similarly-situated
comparator need not be Plaintiffs' exact match, the Court finds
that these numerous relevant distinctions prevent Mr. Little from
being a similarly-situated comparator and therefore Plaintiffs
fail to show prima facie discrimination.

   b. *Pretext*

   Assuming, *arguendo*, that Plaintiffs sufficiently establish a
prima facie case of discrimination, the Court grants summary
judgment in Defendant's favor because there is no issue for trial
as to pretext.   In considering a plaintiff's discrimination claim
against an employer, "[t]he crucial issue [for the court] is an
unlawfully discriminatory motive for a defendant's conduct, not
the wisdom or folly of its business judgment."   *Anderson*, 406
F.3d at 269 (quoting *Jiminez v. Mary Washington College*, 57 F.3d
369, 383 (4th Cir. 1995)).   Likewise, a plaintiff cannot point to
minor discrepancies in an employer's promotion process to rebut

17

the nondiscriminatory reason articulated by the employer;

negligence is not discrimination and cannot sustain an action

brought under Title VII and the ADEA. *See DeJarnette v. Corning,*

*Inc.*, 133 F.3d 293, 299 (4th Cir. 1998); *Smith v. Univ. of North*

*Carolina*, 632 F.2d 316, 346 (4th Cir. 1980) ("[T]he law does not

require, in the first instance, that employment be rational,

wise, or well-considered - only that it be nondiscriminatory.").

Here, Defendant offers a well-documented, nondiscriminatory

reason for denying Plaintiffs promotions, which Plaintiffs simply

fail to rebut. First, OHR personnel performed a thorough desk

audit and agreed on Plaintiffs' ultimate classification. During

the desk audit, Plaintiffs had several opportunities to provide

OHR with information regarding their job duties. (Gov't Exs. 7

and 18.) The desk audit was a coordinated effort by personnel

within three separate divisions of the USPTO, its Office of Civil

Rights, OHR, and OIPE. (Gov't Ex. 18 ¶ 12.) Second, OHR issued

a Position Evaluation Report, which provided a comprehensive

justification for the nonpromotion decision. The eight-page

Position Evaluation Report examined the "Paralegal Specialist

Series" before determining that the "Legal Instruments Examining

Series" was a better fit for Plaintiffs' position. (Gov't Ex. 10

at 2-3.) Within this series and title, Plaintiffs received the

maximum factor-level assignments possible, with the exception of

18

one factor, "Knowledge Required by the Position", to which OHR assigned the second-highest factor level. (See Gov't. Exs. 10 and 25.) The report provided an in-depth explanation for why Plaintiffs' received the second-highest factor level. (Gov't Ex. 10 at 3-6.)

In response to Defendant's proffered nondiscriminatory reason for denying the promotion, Plaintiffs simply argue that numerous problems with the desk audit prove that they were denied promotions for discriminatory reasons. However, the Court rejects Plaintiffs' premise that Defendant's proffered reason is pretext just because the desk audit was not perfect. As mentioned above, the Court's inquiry is focused on discrimination, not negligence. Nothing in the facts Plaintiffs present point to a discriminatory motive. Plaintiffs do not assert that any USPTO official used any racially derogatory language or referred to gender or age in any part of the promotion process. While Plaintiffs may differ with the USPTO's business judgment, Plaintiffs have not responded with admissible evidence that the USPTO's judgment was motivated by race, gender, or age.

Plaintiffs likewise attempt to argue pretext by pointing to statistics showing a long history of problems with the USPTO's promotion process. The Court rejects Plaintiffs' argument

19

because statistical evidence alone is insufficient to establish discriminatory motive.  In searching for discriminatory motive, statistics are only useful in their ability to provide proper context.  *See Anderson*, 406 F.3d at 263.  Here, Plaintiffs argue that the USPTO's history of problems coupled with the specific problems that occurred during the desk audit are sufficient evidence of discrimination but, if anything, these specific examples are just more evidence of a general problem; they do not implicate discrimination as to employment decisions as to the individual Plaintiffs' promotion requests.  General promotions issues are properly within the realm of personnel and business judgment and the courts are not suited to re-examine personnel matters unconnected with civil rights protections.  As such, the Court grants summary judgment for Defendant on Plaintiffs' Title VII and ADEA claims.

## 2.  Constitutional Claims

The Court grants Defendant's motion to dismiss Plaintiffs' constitutional claims pursuant to Rule 12(b)(1) because the United States has not waived its sovereign immunity from suit and, alternatively, pursuant to Rule 12(b)(6) because Plaintiffs fail to state a claim for which relief can be granted.  A Court should grant a Rule 12(b)(1) motion if the jurisdictional facts are undisputed and the movant is entitled to prevail as a matter

20

of law. *Evans v. B.F. Perkins, Co.*, 166 F.3d 642, 647 (4th Cir. 1999). In claims against the United States, a court lacks jurisdiction unless the government waives its sovereign immunity. *See United States v. Jones*, 225 F.3d 468, 470 (4th Cir. 2000) ("Sovereign immunity deprives a court of jurisdiction.").

In *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), the Supreme Court recognized a limited damages remedy against federal officers sued in their individual capacities, but the Court has firmly held that no *Bivens* action lies against the United States or its agencies. *See FDIC v. Meyer*, 510 U.S. 471, 473 (1994). The same is true for suits brought against agency officials in their official capacities. *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002), *aff'd on other grounds*, 540 U.S. 614 (2004).

Here, it is clear that Plaintiffs' suit is against the United States through Defendant, named as defendant in his official capacity. The Complaint begins, "[t]his is an action for damages, backpay, injunctive and other relief against an agency of the federal government . . . ." (Compl. ¶ 1.) It is clear, however, that the United States has not waived its sovereign immunity. It is also clear that Plaintiffs cannot obtain a damages award against Defendant as an agency official sued in his official capacity. Consequently, the Court dismisses

21

Plaintiffs' constitutional claims pursuant to Rule 12(b)(1) because the United States has not waived its sovereign immunity. Alternatively, the Court dismisses Plaintiffs' constitutional claims pursuant to Rule 12(b)(6) because Plaintiffs' *Bivens* claim fails as a matter of law.

## III. CONCLUSION

The Court holds that Plaintiffs fail to establish a prima facie case of discrimination because being subject to the same promotion process does not make a comparator similarly situated where his position and job duties are substantially different. Assuming, *arguendo*, that Plaintiffs were able to establish a prima facie case of discrimination, the Court holds that Plaintiffs fail to show pretext because proof of general inefficiencies in an employer's promotion process, without additional evidence of discrimination, is insufficient to prove discriminatory motive. Finally, the Court holds that Plaintiffs' constitutional claims fail under Rule 12(b)(1) because the United States has not waived its sovereign immunity and, alternatively, under Rule 12(b)(6) because Plaintiffs cannot bring *Bivens* claims

against an agent of the federal government in his official capacity. Therefore, it is hereby

ORDERED that Defendant's Motion for Partial Dismissal and for Summary Judgment is GRANTED.

The Clerk is directed to forward a copy of this Order to counsel.

Entered this _30th_ day of April, 2009.

/s/

Gerald Bruce Lee
United States District Judge

Alexandria, Virginia
04/ 30 /09

23